GEORGIA PINE TURPENTINE CO. v. BILFINGER et al.

(Circuit Court, W. D. North Carolina. March 14, 1904.)

1. PATENTS—SUIT FOR INFRINGEMENT—RIGHT OF COMPLAINANT TO DISMISS.
   Complainant, in a suit for infringement of a patent, who obtained a preliminary injunction, will not be permitted to dismiss without prejudice after all the proofs have been taken, which show that the charge of infringement was wholly unfounded. In such case the defendant is entitled to a decree adjudicating the questions at issue on the merits.

2. SAME—INFRINGEMENT—APPARATUS AND PROCESS FOR WOOD DISTILLATION.
   The Bilfinger patents, No. 658,888, for a wood-distilling apparatus, and No. 674,491, for a process of distilling wood for the manufacture of charcoal and the saving of by-products, to be carried on by the use of such apparatus, construed, and held not infringed.

In Equity. Suit for infringement of letters patent No. 658,888 for a wood-distilling apparatus, and No. 674,491 for a process of distilling wood for making charcoal and saving the by-products, granted to Carl W. Bilfinger on a division of the same application. On final hearing.

Dickerson, Brown, Reagener & Binney and R. D. Douglas, for complainant.

Schreiter & Mathews, W. P. Bynum, Jr., W. C. Douglass, and Henry Schreiter, for defendants.

BOYD, District Judge. This is a suit in equity, by the Georgia Pine Turpentine Company v. the Naval Stores Supply Co. and Carl W. Bilfinger, for infringement of letters patent No. 658,888 and No. 674,491, granted to the defendant Bilfinger for an improved apparatus and process for manufacture of charcoal and saving of by-products, which said letters patent, the same having been granted in the years 1900 and 1902, were thereafter, with all rights and privileges thereunder, as alleged in the bill, duly sold, assigned, and transferred to the complainant, who, at the commencement of this suit, was the sole owner thereof. The further allegation in the bill is that, after complainant became the owner of said patents, the defendant Bilfinger organized the Naval Stores Supply Company, and in conjunction with the said company, and in violation of plaintiff's rights, was unlawfully using the same. Each of the defendants filed a separate answer, denying an infringement of the patent owned by plaintiff, and averring the right to have and use the apparatus and process connected with their business. The pleadings have been completed, both parties have taken proofs, and the case has been set down for final hearing upon the pleadings and the proofs.

At the final hearing complainant moved to have its bill dismissed, without prejudice, upon payment of defendants' costs. This motion must be denied. It is well settled by authorities that complainant cannot dismiss his bill at will after all proofs are taken and the case is set for final hearing. Such motion is addressed to the sound discretion of the court, but will not be granted in a case where "such proceedings have been taken as entitle the defendant to a decree." Chicago, etc.,

¶ 1. See Patents, vol. 38, Cent. Dig. § 551.

R. Co. v. Rolling Mill Co., 109 U. S. 702, 3 Sup. Ct. 594, 27 L. Ed. 1081. In other cases it is held that such motion will not be granted where the adverse party would be prejudiced or put to a disadvantage. Johnson v. Bailey (C. C.) 59 Fed. 670, Callahan v. Hicks (C. C.) 90 Fed. 539, and the cases cited there. In this case no reason is stated why complainant desires to dismiss its bill, except as it appears from the proceedings that complainant realizes the complete failure to make out a case against the defendants, though its proofs cover every feature of defendants' apparatus and the process carried on therein, showing that complainant's counsel and expert witness have diligently and skillfully exploited every path to that end. On the other side, defendants establish by their proofs, affirmatively, that the apparatus they use and the process they carry on in their plants at Biscoe and Aberdeen are fundamentally different from those set forth in the patents in suit. Would it, then, be just and equitable here to grant complainant's motion now, after defendants have been subjected to the trouble and expense of defending the suit and bearing the detrimental consequences of the litigation until it could be submitted for final decision? Would it be just and equitable to nullify their efforts and expense incurred in producing the proofs showing that the charge of infringement made against them was and is wholly unfounded?

Defendants are charged in the bill with infringement of letters patent; they were served with the process of the court, required to appear, answer, and to produce proofs in support of their answer. Whether complainant commenced this action on misinformation or from error of judgment, or for other reasons, the institution of the suit, the charge of infringement, the publicity given by the complainant to the pendency of the same, to the injunctive orders of the court, and to the proceedings in this case throughout the entire territory where defendants' business extends, must have had a detrimental effect on defendants' business. This effect is of such nature as would not be removed if the bill of complainant herein be merely voluntarily dismissed by an order on such motion as complainant now proposes. Such damage to defendants' reputation and business standing can only be removed by a judgment of the court deciding the controversy on the merits.

The bill of complainant should not be dismissed, as complainant now proposes, also because of the pendency of similar suits in other districts, involving the same apparatus, the same process, as in the case at bar, and based on these same patents. The pendency of at least one other suit of this kind (in the Western District of Georgia) is shown by the proofs in the case at bar, the fact having been brought out by the cross-examination of defendants' witness Bilfinger by complainant's counsel. This other suit was commenced after defendants answered here, and no proofs have yet been taken. If this suit here should now be merely dismissed by an order on request of complainant, the same issue will be required to be litigated in the other case. This procedure may be repeated by complainant as often as it may succeed in inducing the courts to dismiss its bills before judgment, and without prejudice after the proofs are taken and the case set down for final hearing. Such proceeding would certainly be vexatious to the utmost, and work irreparable injury to defendants' inter-

ests. For these reasons, complainant's motion is denied, and the case will be considered and decided by the court on the proofs, and a judgment entered therein.

The first of the two letters patent, No. 658,888, is for improvements in wood distilling apparatus; and the second, No. 674,491, is for a process of distilling wood for the manufacture of charcoal, and saving of by-products, to be carried on in the apparatus set forth in the first patent. The second letters patent were granted on a subdivisional application of the first. Originally only one patent was applied for—for the apparatus and the process; thereafter, the subject-matter of the process was embodied in a subdivisional application, under which the second patent (No. 674,491) issued. In the specification of the process patent, the inventor says (page 1, line 34) as follows:

"The objects of my improved process are, first, to decompose wood into (1) solids, (2) volatile and (3) nonvolatile liquids, and (4) gases; second, to separate these ingredients from each other; and, third, to prevent decomposition of any of the ingredients in the process of decomposing the raw material."

The several products shall also be recovered separated from each other; the solid ingredient as charcoal; the volatile and nonvolatile liquids as wood turpentine, oils, and tar; the gas as illuminating gas. Thus we may say that in these particular respects the process of the patent differs from other processes for distilling wood, and the apparatus for carrying on this process is particularly designed for it. This is the apparatus of the Bilfinger patent No. 658,888, and it is with respect to this apparatus that the inventor says, at the outset of the specification of his process patent:

"The apparatus necessary for the carrying on of the process is more fully described in my United States letters patent No. 658,888, granted October 2, 1900," etc.

This statement has an important bearing on the issue of infringement involved in the case at bar. It shows that the inventor realized that the process cannot be carried on in any other apparatus except the particular apparatus that he specifically sets forth in the other patent as an integral part of his invention. Defendants' exhibit "Bilfinger Plans of Defendants' Plants at Biscoe and Aberdeen," and as explained in the testimony of the defendant Bilfinger, shows clearly, on comparison with the drawings and descriptions of the Bilfinger patent No. 658,888, that the apparatus employed in defendants' plants at Biscoe and Aberdeen do not contain a solitary feature of that which is set forth in the patent as the improvement or invention designed for the purpose of carrying on the process, the subject-matter of the other Bilfinger patent, No. 674,491. The evidence shows that without these specific means—the sectional flues, dampers, outlets, and valves —the process cannot be carried on, or such results obtained as set forth in the patent. Defendants' plants comprise apparatus distinct from the ordinary wood-distilling plants in several respects, but every one of the specific features is also wholly different from what is disclosed in the Bilfinger patent No. 658,888, and these improvements, embodied in defendants' plants, are the subject-matter of another patent (defendants' exhibit, "Bilfinger & Hallock 1903 Patent"). They

serve for the carrying on of a process wholly different from the process specified in the Bilfinger patent No. 674,491, and producing wholly different results. The fact that the improvements embodied in the apparatus of defendants' plants at Biscoe and Aberdeen are covered by a subsequent patent is prima facie proof that defendants' plants are patentably different from the apparatus set forth in the patent in suit. That they are different also in every material or substantial respect was proved by the testimony for the defendants, and by the letters patent introduced in evidence at the close of defendants' proofs. Neither the proofs that the improvements embodied in the apparatus of defendants' plants at Biscoe and Aberdeen are the subject-matter of this patent, nor the proof made by the testimony of defendant Bilfinger that these apparatuses are differently constructed for a different process, and that, in fact, a wholly different process is carried on in defendants' plants at Biscoe and Aberdeen, was contradicted or rebutted in any manner. It must therefore be accepted as established by the proofs:

(1) That defendants' plants are not constructed according to the Bilfinger patent No. 658,888, in suit herein; and,

(2) That no such process as set forth and claimed in the Bilfinger patent No. 674,491, in suit herein, is carried on in the plants of the defendants.

A decree will be entered for defendants, dismissing the bill of complaint herein, with costs.