(No. 24444. ▮▮▮▮▮▮▮▮▮▮▮▮)
HERBERT J. DANOFF, Appellee, *vs.* ROBERT LARSON,
Appellant.

*Opinion filed April 15, 1938—Rehearing denied June 8, 1938.*

MACLAY & HODGSON, for appellant.

JOHN J. SONSTEBY, *amicus curiæ.*

Mr. JUSTICE SHAW delivered the opinion of the court:

Plaintiff (appellee here) sued in the municipal court of
Chicago for merchandise sold and delivered; summons was
issued and was returned "not found." Three *alias* sum-
monses were subsequently issued and were likewise returned

"not found." The bailiff reported to the court that several attempts had been made to serve the defendant at his place of business, but that on each occasion the person in charge of the office stated that the defendant was not in. The court then entered an order directing service of the summons by delivering a copy thereof, together with a copy of the papers attached thereto, stamped by the clerk "A true copy," to the defendant at his place of business or by serving some person employed in the defendant's place of business and by sending a copy thereof, together with a copy of the papers attached thereto, to the defendant at his place of business, by United States mail, with postage fully prepaid. Service was had in compliance with this order, defendant was defaulted for want of appearance, judgment was rendered against him and execution issued on that judgment. Upon return of the execution unsatisfied, garnishment proceedings were commenced, and after service upon the garnishee, defendant filed, and the court overruled, a motion to quash the summons and to vacate the judgment. This appeal was taken from that order.

The defendant contends that no personal service was had upon him, service not having been made according to statute, and that, therefore, the judgment rendered in the municipal court of Chicago is void. He also contends that the determination of the manner in which summons shall be served is a legislative function; that the legislature has prescribed the manner in which summons shall be served in the courts of Illinois, including the municipal court of Chicago; that section 20 of the Municipal Court act, properly construed, does not permit the judges of the municipal court to regulate the manner of service of summons, as that section applies only to rules of practice; that service in any other manner than that provided by statute is void and confers no jurisdiction, and that section 20 of the Municipal Court act is unconstitutional, as an unlawful delegation of legislative authority, if it be construed to mean

that the judges of the municipal court are given authority to make such determination.

Service of summons in this case was had under rule 10A of the civil practice rules of the municipal court, particularly that part of the rule which provides as follows: "In any case in which an officer is unable from any cause to make due service of a summons the court, upon application therefor, and upon notice to the bailiff, may direct such service to be made in such manner as the court may deem proper."

The legislature has prescribed the manner in which summons shall be served generally, (Ill. Rev. Stat. 1937, chap. 110, par. 137,) and has also prescribed the manner in which summons shall be served in the municipal court of Chicago (Ill. Rev. Stat. 1937, chap. 37, par. 397.) The provision for service in the municipal court of Chicago, however, is a part of an act entitled "An act in relation to a municipal court in the city of Chicago" adopted pursuant to section 34 of article 4 of the constitution. Section 20 of the Municipal Court act (Ill. Rev. Stat. 1937, chap. 37, par. 375) provides that the judges of that court shall have power to adopt, in addition to or in lieu of the provisions therein contained, such rules regulating the practice in said court as they may deem necessary or expedient for the proper administration of justice. It appears, therefore, that the legislature has delegated to that court the power to prescribe its own rules of practice in addition to or in lieu of the provisions made in respect thereto by the legislature. This delegation of rule-making power has been held constitutional. *Hopkins* v. *Levandowski,* 250 Ill. 372; *People* v. *Gill,* 358 id. 261; *Ptacek* v. *Coleman,* 364 id. 618.

No case has been called to our attention in which it has been held that the power to make rules of practice extends so far as to give a court power to prescribe the time .or manner of serving initial process. In *Union Nat. Bank of Chicago* v. *Byrem,* 131 Ill. 92, we said that the word

"practice," as used in the Attachment act, included the mode of serving intermediate, and the mode of executing final, process. The only question in that case, however, was whether or not shares of stock in an incorporated company were subject to attachment. In the later case of *Wilson* v. *Trustees of Schools,* 138 Ill. 285, we repeated and approved the same definition. The question there involved was whether or not a writ of possession could be issued upon a judgment in ejectment which was more than seven years old and had not been revived. In *Therens* v. *Therens,* 267 Ill. 592, a petition was filed in the probate court of Cook county for leave to answer an original petition for leave to sell real estate to pay debts, alleging that the appellants had not been served with process in that proceeding. The petition was founded upon section 19 of the Chancery act, and upon section 101 of the Administration act, providing that in proceedings to sell real estate to pay debts the practice should be the same as in cases in chancery. In that case we held that the practice there referred to was such as took place after the petition was filed and service had.

References to dictionaries, text-books and the various series of Words and Phrases will disclose many efforts to define the word "practice," but none of those definitions which we have noticed has gone to the exact point here under consideration, and none of them is any more helpful than our own cases above cited. Cases concerning the power of a legislature to prescribe certain rules are of very little use to us on this inquiry because, within constitutional limitations, its power extends over matters of substantive law as well as mere rules of procedure. So far as we have been advised by the briefs, and such independent investigation as we have been able to give the subject, there is no authority precisely in point.

To begin with, it must be held that the Municipal Court act was not intended to give the judges of that court any

power to make substantive rules of law, because this would violate that provision of the constitution which divides the government into three parts. Article 3 of the constitution of 1870 makes this division and expressly provides that "No person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others," etc. It seems clear to us that the means by which a person is summoned into court and subjected to its jurisdiction goes deeply into the substance of that person's rights, and is more than a mere matter of form. No matter what may be said as to routine procedure after the court has acquired jurisdiction over a defendant's person, it cannot be denied that the means of obtaining that jurisdiction goes to the very foundation of the principles of due process. Neither the judges of the municipal court nor of this or of any other court, has power to take jurisdiction over the person of a citizen without according him due process of law. Not even the legislature may otherwise provide. The determination of what constitutes due process of law is, in the first instance, a legislative function, limited by the constitution and subject to review by the courts for a determination of whether or not the means provided satisfy the constitutional requirement. After jurisdiction of the person has been obtained by constitutional means, a different situation exists. The orderly and expeditious handling of the court's business requires the observance of rules which do not concern the substantive rights of the defendant, and we think that the power of the judges of the municipal court must be limited to this field.

In addition to what we have already said, there is still another reason why the rule in question cannot be sustained. Even if we were of a different view as to the breadth of the word "practice," Rule 10A would necessarily fall. Although the act purports to confer power on a majority of the judges to make rules, there is nothing in it which authorizes them to delegate that power to a single judge. This rule attempts

524

to confer the power upon each individual judge of the municipal court to make whatever order he sees fit in each individual case. Obviously, the kind of service ordered in one case might not be the same as that ordered in another. No person within the jurisdiction of that court would have any means of knowing whether or not he had been lawfully served with process. Neither would any person examining the public records have any certain guide for determining the validity of a judgment, and each judgment would be subject to further litigation to decide whether or not the means of obtaining personal jurisdiction in that particular case had amounted to due process of law. We are of opinion that the rule in question is void, and that the court erred in refusing to sustain the motion to vacate the judgment.

The judgment of the municipal court of Chicago is reversed and the cause is remanded to that court, with directions to sustain the defendant's motion and vacate the judgment. *Reversed and remanded, with directions.*